1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REGIONAL MEDICAL CENTER OF SAN JOSE,<br><br>Plaintiff,<br><br>v.<br><br>WH ADMINISTRATORS, INC., et al.,<br><br>Defendants. | Case No.  5:17-cv-03357-EJD<br><br>**ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN PART RHC'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 118, 119, 121 |

11    Plaintiff Regional Medical Center of San Jose ("Plaintiff") sues RHC Management Co.,

12  LLC ("RHC Management") and RHC Management Health & Welfare Trust (the "Plan")

13  (together, "RHC"), WH Administrators, Inc., the Phia Group, LLC ("Phia Group"), and Benefit

14  Administrative Systems ("BAS") (collectively, "Defendants"), asserting causes of action arising

15  from Defendants' alleged failure to pay for all of the medical care Plaintiff provided to a

16  beneficiary of the Plan.  *See* Complaint ("Compl."), Dkt. No. 1.  In essence, Plaintiff contends that

17  the Plan had a $6,350 annual maximum out-of-pocket ("MOOP") provision, and therefore

18  Defendants were required to pay all of the beneficiary's medical expenses above this amount.

19  Defendants contend that pursuant to the Plan, they are required to pay no more than 120% of

20  Medicare rates, which they contend have already been paid.  Before the Court are three separate

21  motions to dismiss brought by RHC, BAS, and Phia Group.  Dkt. Nos.  118, 119, 121.  Having

22  considered the submissions of the parties, the relevant law, and the record in this case, the Court

23  GRANTS BAS's and Phia Group's motions and GRANTS in part RHC's motion to dismiss.

24  **I.    BACKGROUND**

25      **A.    Factual Background**

26    Plaintiff is an acute care hospital located in Santa Clara County, California.  Compl. ¶ 6.

27

28  Case No.: 5:17-cv-03357-EJD
ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING
IN PART RHC'S MOTION TO DISMISS

1

United States District Court<br>Northern District of California

The Plan is a self-funded ERISA health benefits plan. *Id.* ¶ 7. Plaintiff alleges that WH Administrators is the Plan's designated Plan Administrator, and RHC Management, which owns and operates McDonald's franchise restaurants, is the Plan's sponsor and a "*de facto* Plan Administrator." *Id.* ¶ 11.[1] Plaintiff alleges that BAS is the claims administrator for the Plan and "acted in some respects in the capacity of a *de facto* Plan Administrator." *Id.* ¶ 9. Lastly, Plaintiff alleges that Phia Group "has been working behind the scenes to encourage Defendants to improperly interpret the terms of the Plan," while the "complete facts regarding the relationship between the Defendants remain unclear at this time." *Id.* ¶ 10.

In February 2015, Plaintiff admitted a very ill woman (the "Patient") after she had an accident for what became nearly a one-month hospital stay. *Id.* ¶ 1. At that time, the Patient was a beneficiary of the Plan. *Id.* In early March 2015, when the Patient was still being treated, Plaintiff called to verify the Patient's benefits under the Plan. *Id.* ¶ 57. Plaintiff alleges that "a Plan representative named 'Genevieve'" confirmed that (1) the Patient's coverage with the Plan was active, and that the Patient was eligible from January 1, 2015, "through the present"; (2) the Plan "would cover 80% of Patient's inpatient hospital stay"; and (3) "there was a $3,000 deductible that had not been met, and a [Maximum Out-of-Pocket] of $6,350 that had not yet been met." *Id.* ¶ 57. Plaintiff also alleges that the Plan provided a specific authorization number for the Patient's inpatient care, which Plaintiff recorded as "508668." *Id.*

Relying on these representations, Plaintiff provided inpatient care to the Patient. Plaintiff's bill for the Patient's care totaled $892,269.79. *Id.* ¶ 1. However, the "Plan and/or its representatives" paid just $73,043.32, which is 8% of the total bill. *Id.* Plaintiff asserts that the Plan arrived at this figure by relying on "the unsupported assumption that they never have to pay more than 120% of the rates that the federal government pays under the Medicare program." *Id.* ¶ 26. Thus, instead of paying percentages of Plaintiff's actual charges, the Plan paid only percentages of 120% of the Medicare rates for those services. *See id.* ¶ 32. For example, instead

---

[1] According to RHC, WH Administrators is no longer in operation.

United States District Court
Northern District of California

1    of paying 100% of Plaintiff's charges for services rendered after the Plan's MOOP threshold was

2    met, the Plan paid 100% of 120% of the Medicare rates for those services.  *Id.*  Plaintiff alleges

3    that 120% of Medicare rates is "just a fraction of the standard charges by [Plaintiff] and all other

4    hospitals in this geographic area (as well as many others)."  *Id.* ¶ 26.  Because Plaintiff's charges

5    were above 120% of Medicare rates, the Plan's refusal to pay any more than 100% of 120% of

6    Medicare rates for services provided "left the Patient on the hook for the bill's remainder, which is

7    far more exposure" than the stated MOOP limit.  *Id.* ¶ 17.

8         Plaintiff alleges that the "Plan Document and Summary Plan Description for RHC

9    Management Health and Welfare Trust, PPACA Bronze Plan" ("SPD") did not disclose the fact

10   that the Plan would pay at most only 120% of Medicare rates for covered services or that the Plan

11   had a "purported limitation buried in the undisclosed documents based on an amorphous

12   Medicare-based limitation that supplanted for hospital services the broader definition in the Plan

13   of the term 'Reasonable and Customary.'"  *Id.* ¶ 59.[2]  Plaintiff also alleges that at no time during

14   the authorization and verification phone call with the Plan's representative did the representative

15   disclose that "the Plan would not pay more than 120% of Medicare [rates] for hospital services."

16   *Id.*  Plaintiff "pursued all internal appeals available under the Plan and exhausted all appeal

17   remedies," but the Plan has allegedly "refused to pay a cent more" than the $73,043.32 it has

18   already paid.  *Id.* ¶¶ 2, 68.  Plaintiff contends that "Defendants caused this substantial

19   underpayment" through a calculated scheme that "circumvent[s]" both the [MOOP] limitation in

20   the Plan, "[t]he MOOP limit that the federal Affordable Care Act ("ACA") imposed upon the Plan

21

22   [2] Plaintiff objects to the Court considering the SPD on a basis of authenticity because it is a
     "summary of the plan."  *See* Opp'n to BAS Mot. at 6 n.6 (citing Objections to Decl. of Ron E.
23   Peck, Dkt. No. 46; Objections to Decl. of Hector Salitrero, Dkt. No. 47).  The objection is
     overruled.  Plaintiff refers to portions of the SPD in its complaint; the terms of the SPD are central
24   to the asserted claims and Plaintiff stated that for purposes of its complaint, it would "assume that
     what Defendants provided as the plan document is correct and complete."  Compl. ¶ 16.
25   Moreover, Plaintiff's objection disputes more so the sufficiency of the SPD instead of whether the
     SPD is not the document Defendants state it is through an authenticating declaration.  Therefore,
26   the Court may consider the SPD.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see
     also Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, SA CV 15-0736-DOC
27   (DFMx), 2016 WL 6892140, at *23 (C.D. Cal. Nov. 22, 2016).

     Case No.: 5:17-cv-03357-EJD
28   ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN
     PART RHC'S MOTION TO DISMISS

1    in 2015," and the "substitution of the Reasonable and Customary level of payment called for under

2    the Plan with payment at 120% of Medicare [rates]."  *Id.* ¶¶ 3, 74.

3        **B.    Procedural History**

4        On June 6, 2017, Plaintiff filed suit seeking, *inter alia*, to enforce rights under the

5    Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").  *Id.* ¶

6    4.  The complaint alleges four causes of action: (1) a claim for benefits under ERISA §

7    502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), *id.* ¶¶ 65-79; (2) a claim for enforcement of ACA §

8    2707(b) "via ERISA § 502(a)(1)(B)," *id.* ¶¶ 80-86; (3) intentional misrepresentation, *id.* ¶¶ 87-93;

9    (4) negligent misrepresentation, *id.* ¶¶ 94-100; and (5) intentional interference with contractual

10   relations, *id.* ¶¶ 101-109.

11       Thereafter, Defendants filed separate motions to dismiss.  In December of 2017, the Court

12   dismissed the suit on the grounds that the Plaintiff lacked standing to bring suit.  *See* Dkt. No. 69.

13   Plaintiff appealed and the Ninth Circuit reversed, holding that Plaintiff's right to receive Plan

14   benefits gave it the limited right to sue for additional benefits.  *See* Dkt. No. 94.  However, the

15   Ninth Circuit interpreted the SPD's "anti-assignment" provision as forbidding assignment of the

16   right to sue for anything other than benefits payable under the terms of the Plan.  *Id.* at 3.

17       After the case was remanded, Defendants filed their respective motions seeking dismissal

18   of Plaintiff's complaint.  *See* Dkt. Nos. 118 ("Phia Mot."), 119 ("BAS Mot."), 121 ("RHC Mot.").

19   Plaintiff filed oppositions, *see* Dkt. Nos. 125 ("Opp'n to Phia Mot."), 126 ("Opp'n to BAS Mot."),

20   127 ("Opp'n to RHC"), and Defendants filed replies (*see* Dkt. Nos. 128 ("BAS Reply"), 129

21   ("Phia Reply"), 130 ("RHC Reply")).

22   **II.   LEGAL STANDARD**

23       **A.    Motion to Dismiss under Rule 12(b)(6)**

24       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

25   statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to

26   dismiss a complaint for failing to state a claim upon which relief can be granted under Federal

27

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

2  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

3  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

4  12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

5  its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

6  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

7  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8      In reviewing the plausibility of a complaint, courts "accept factual allegations in the

9  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

10  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

11  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

12  fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

13  2008).  And even where facts are accepted as true, "a plaintiff may plead herself out of court" if

14  she "plead[s] facts which establish that [s]he cannot prevail on [her] . . . claim."  *Weisbuch v. Cty.*

15  *of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

16      **B.    Leave to Amend**

17      If the Court determines that a complaint should be dismissed, it must then decide whether

18  to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

19  amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

20  of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

21  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

22  marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should

23  grant leave to amend even if no request to amend the pleading was made, unless it determines that

24  the pleading could not possibly be cured by the allegation of other facts."  *Id.* at 1130 (internal

25  quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing

26  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

27

28

1 | moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th
2 | Cir. 2008).

3 | **III.     DISCUSSION**

4 |      **A.     First Cause of Action:  Benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §**
5 |            **1132(a)(1)(B)**

6 |      The first cause of action is premised entirely on the MOOP limit in the SPD.  Specifically,

7 | the MOOP provision provides that "[i]f, in a Calendar Year, a Covered Person accumulates an

8 | Out-of-Pocket amount which equals [$6,350], the Plan will pay 100% of any further Covered

9 | Medical Expenses incurred during the remainder of that Calendar Year."  SPD at p. 27.  Plaintiff

10 | alleges that the "$6,350 was *supposed* to represent the upper limit of what the Patient could be

11 | required to pay in calendar year 2015," and therefore Defendants are liable for the balance of the

12 | unpaid bill, *i.e.* $816,226.47.  Compl. ¶¶ 1, 16-17.  Plaintiff asserts that this "substantial

13 | underpayment" of the bill amounted to an improper denial of benefits to the Patient that violated

14 | 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 3, 77.  Defendants counter that they are improper Defendants

15 | under ERISA and/or Plaintiff's interpretation of the MOOP provision is incorrect.  Specifically,

16 | Defendants contend that benefits are capped at 120% of Medicare rates, which have already been

17 | paid.

18 |      "To state a claim for benefits under ERISA, plan participants and beneficiaries have to

19 | plead facts making it plausible that a provider owes benefits under the plan." *Elizabeth L. v. Aetna*

20 | *Life Ins. Co.*, No. CV 13-2554 SC, 2014 WL 2621408, at *2 (N.D. Cal. June 12, 2014) (citing 29

21 | U.S.C. § 1132(a)(1)(B); *Iqbal*, 556 U.S. at 677).  Thus, at a minimum "[a] plaintiff who brings a

22 | claim for benefits under ERISA must identify a specific plan term that confers the benefit in

23 | question." *Steelman v. Prudential Ins. Co. of Am.*, 2007 WL 1080656, at *7 (E.D. Cal., Apr. 4,

24 | 2007) (citation omitted).  "In interpreting an ERISA plan, the Court must apply contract principles

25 | derived from state law," and interpret the plan's terms in an ordinary and popular sense, as would

26 | a person of average intelligence and experience." *Id.*

27

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

For the reasons discussed below, the Court finds it unnecessary to determine which of the Defendants is the proper defendant under ERISA because regardless of who that may be, the MOOP provision does not entitle Plaintiff to any additional benefits beyond what has already been paid.

### i. The MOOP Provision Does Not Provide for Benefits Beyond What Plaintiff Has Been Paid

The MOOP provision clearly limits the Plan's obligation to pay only "*Covered Medical Expenses*." SPD at 27 (emphasis added). In turn, the "Covered Medical Expense" section of the SPD specifies coverage for "[r]easonable and customary charges incurred. . . subject to the Exclusions and Limitations of the Plan." *Id.* at 28.[3] Thus, even accepting Plaintiff's view that the MOOP entitles it to additional payments, that provision is limited to "reasonable and customary charges" within the meaning of the SPD and depends on whether any "Exclusions and Limitations of the Plan" apply.

The meaning of "reasonable customary charges" is captured within the "Definitions of Terms" section of the SPD under "Maximum Reimbursable Charge." *Id.* at 61. Specifically, within the "Maximum Reimbursable Charge" definition, the SPD explains that "[i]n the case of a provider that is a Hospital . . . Reasonable and Customary is the Allowable Claim Limit amount." *Id.* The SPD defines "Allowable Claim Limits" for "Hospitals, Ambulatory Health Care Center, Dialysis Clinics and other facilities for Inpatient and Outpatient Facilities" such as Plaintiff as 120% upon the Medicare allowed amount for the services in the geographic region, or when no Medicare Pricing [is] available, 50% of billed charges." *Id.* at 54. Further, the SPD explains that "Reasonable and Customary charges may, at the Plan Administrator's discretion, alternatively be determined and established by the Plan using normative data such as, but not limited to, Medicare cost to charge ratios, average wholesale price (AWP) for prescriptions and manufacturer's retail

---

[3] Hospital room and board and other hospital related services are listed as "Covered Medical Expenses." *Id.*

Case No.: 5:17-cv-03357-EJD
ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN PART RHC'S MOTION TO DISMISS

1   pricing (MRP) for supplies and devices." *Id*. at 63.  The SPD also explains that:

2          The term "Reasonable and Customary" *does not necessarily mean the*
           *actual charge made* . . . . The Plan Administrator will determine what
3          the Reasonable and Customary charge is, for any procedure, service
           or supply, and whether a specific procedure, service or supply is
4          Reasonable and Customary.

5   *Id*. at 63-64 (emphasis added).  Pursuant to the definitions cited above, the Plan Administrator had

6   full discretion to decide what constituted "Reasonable and Customary charges" based on

7   "normative data."  The Plan Administrator exercised its discretion, as reflected in the SPD's

8   "Schedule of Benefits-PPACA Bronze Plan," which specifies that for "Non-Network Providers"

9   such as Plaintiff, benefits for "INPATIENT HOSPITAL" are "Based on Allowable Charge of

10  120% of Medicare [rates]" and that an "80% Deductible Applies."  SPD at pp. 4-10, Dkt. No. 13-

11  1.

12         Moreover, there is a full page in the SPD set aside to explain the "Allowable Claim

13  Limits" separate and apart from the "Definitions of Terms," which states in pertinent part:

14         "Allowable Claim Limits" means the charges for services and
           supplies, listed and included as Covered Expenses under the Plan,
15         which are Medically Necessary for the care and treatment of Illness
           or Injury, *but only to the extent that such fees are within the Allowable*
16         *Claim Limits. The Allowable Claim Limit for charges by a Hospital*
           *facility and for charges by facilities which are owned and operated*
17         *by a Hospital shall be based upon 120% of Medicare allowed amount*
           *for the services in the geographic region*, or when no Medicare
18         pricing amount available, 50% of Billed Charge.

19                                 *    *    *

           Notwithstanding any conflicting contracts or agreements, the Plan
20         may consider the Allowable Claim Limits as the maximum amount
           of Covered Expense that may be considered for reimbursement under
21         the Plan. . . .

22  *Id*. at 19 (emphasis added).

23         As for "Exclusions and Limitations," the SPD provides in pertinent part that "[t]his Plan

24  does not cover and no benefits shall be paid for any loss caused by, incurred for or resulting from:

25  "1.  Charges in excess of reasonable and customary fees."  *Id*. at 41.  Thus, the MOOP provision,

26  when read in conjunction with the other pertinent provisions in the SPD, provides for

27  Case No.: 5:17-cv-03357-EJD
28  ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN
    PART RHC'S MOTION TO DISMISS

                                        8

1   reimbursement for services rendered by Plaintiff capped at 120% of the Medicare rate allowed

2   amount for services in Plaintiff's geographic region.  *Id.*  Plaintiff has already been paid at 120%

3   of the Medicare rates.

4          Plaintiff proffers several reasons why the provisions above do not limit benefits, none of

5   which are persuasive.  First, Plaintiff contends that "[n]othing in the MOOP references limiting it

6   to the Plan's 'Allowable Claim Limits' provision located elsewhere in the SPD."  *See* Opp'n to

7   BAS Mot. at 6.  But the lack of any direct cross-reference between the MOOP and the "Allowable

8   Claim Limits" provision does not render the latter a nullity.  An ERISA plan is a contract, the

9   interpretation of which is guided by contract principles derived from state law and "guided by the

10  policies expressed in ERISA and other federal laws."  *Gilliam v. Nevada Power Co.,* 488 F.3d

11  1189, 1194 (9th Cir. 2007).  One such contractual principle dictates that courts reviewing ERISA

12  plans are to "endeavor to interpret each provision consistent with the entire document such that no

13  provision is rendered nugatory."  *Id.*  The "Allowable Claim Limits" provision clearly states that

14  "charges by a hospital facility" like Plaintiff "shall be based upon 120% of Medicare rates allowed

15  amount for the services in the geographic region."  *Id.* at 19.  The 120% of Medicare rates cap

16  appears in two other sections of the SPD:  the Schedule of Benefits and the "Definition of Terms".

17  *Id.* at 4-10, 54.  Taken together, the MOOP and "Allowable Claim Limits" provisions mean that

18  even after the $6,350 MOOP threshold is met, the Plan (as described in the SPD) is not required to

19  pay any charges exceeding 120% of Medicare rates.

20         Second, Plaintiff contends that the Plan's reliance on the "Allowable Claim Limits"

21  provision in the SPD was "arbitrary and capricious" because that provision "conflict[s] with the

22  Plan's definition of Reasonable and Customary."  Compl. ¶¶ 42, 75.  There is no such conflict.

23  The SPD explicitly states that in the case of a hospital provider, the "Reasonable and Customary"

24  charge will be the "Allowable Claim Limits Amount."  SPD at 61.  The SPD also provides that the

25  "Allowable Claim Limits will supersede any other Plan provisions related to [the] application of

26  Usual and Reasonable Charge determination."  *Id.* at 19.  As a result, the "Allowable Claim

27

1    Limits" provision and the Plan's definition of Reasonable and Customary rates are wholly

2    consistent.

3          Relatedly, Plaintiff contends that the SPD's definition of "Reasonable and Customary"

4    rates conflicts with the generally accepted insurance industry's definition of the same.  Compl. ¶

5    42.  However, the SPD gave the Plan Administrator full discretion to decide what were

6    "Reasonable and Customary charges" based on "normative data."  SPD at 61.  Medicare rates are

7    a type of normative data, and Plaintiff does not contend otherwise.  Therefore, Plaintiff's second

8    argument fails as a matter of law.

9          Third, Plaintiff contends that the Plan requires the entirety of the Patient's medical bills,

10   and not just the portion of the bills exceeding the 120% Medicare rate, to be considered when

11   calculating whether the MOOP threshold has been satisfied.  But according to the SPD, the

12   decision to allow only a "fraction" of the "patient's out of pocket liability" to qualify for the

13   $6,350 MOOP threshold—by excluding all charges exceeding 120% of rates—did not run afoul of

14   the Plan's terms or conflict with the Plan's MOOP provision.  Although the MOOP provision

15   establishes an "Out-of-Pocket Maximum" of $6,350 for a "Covered Person," the SPD also clearly

16   informs a "Covered Person" on the very same page where the MOOP provision appears that

17   "Charges in Excess of Reasonable and Customary Fees" do not accumulate toward the "Out-of-

18   Pocket Maximum."  SPD at 27.  Because the Plan dictates that Reasonable and Customary will be

19   the "Allowable Claim Limits amount" for charges by a hospital provider, the portions of

20   Plaintiff's charges that exceeded 120% of Medicare rates did not qualify as part of the "Out-of-

21   Pocket Maximum Per Person."  *See id.*  Thus, exclusion of charges above 120% of Medicare rates

22   towards the $6,350 "Out-of-Pocket Maximum" did not conflict with the MOOP provision in the

23   Plan.

24         ii.    **Alleged Violation of Disclosure Rules**

25         Plaintiff also contends that the provisions limiting claims to 120% of Medicare rates were

26   inadequately disclosed in the SPD.  Opp'n to BAS Mot. at 10.  Specifically, Plaintiff alleges that

27

28   Case No.: 5:17-cv-03357-EJD
     ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING
     IN PART RHC'S MOTION TO DISMISS

United States District Court
Northern District of California

1    the SPD has "violated the legal requirement that an SPD 'shall be written in a manner calculated

2    to be understood by the average plan participant.'"  Compl. ¶ 37 (citing 29 U.S.C. § 1022).

3    Federal regulations provide further detail on how to fulfill ERISA's disclosure requirements:

> The format of the summary plan description must not have the effect
> to misleading, misinforming or failing to inform participants and
> beneficiaries. Any description of exception, limitations, reductions,
> and other restrictions of plan benefits shall not be minimized,
> rendered obscure or otherwise made to appear unimportant. Such
> exceptions, limitations, reductions, or restrictions of plan benefits
> shall be described or summarized in a manner not less prominent than
> the style, captions, printing type, and prominence used to describe or
> summarize plan benefits. The advantages and disadvantages of the
> plan shall be presented without either exaggerating the benefits or
> minimizing the limitations.  The description or summary of restrictive
> plan provisions need not be disclosed in the summary plan description
> in close conjunction with the description or summary of benefits,
> provided that adjacent to the benefit description the page on which
> the restrictions are described is noted.

12    29 C.F.R. § 2520.102-2(b).

13          The Ninth Circuit has construed § 2520.102-2(b) as requiring either: (1) the description or

14    summary of the restrictive provision must be placed "in close conjunction with the description or

15    summary of benefits," or (2) the page on which the restrictive provision is described must be

16    "noted" "adjacent to the benefit description."  *Spinedex Physical Therapy USA, Inc. v. United*

17    *Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1294-95 (9th Cir. 2014).  In *Spinedex*, the Ninth

18    Circuit held that the provisions in two different ERISA plans that specified a two-year limitation

19    period for filing claims for benefits were unenforceable because they were not properly disclosed

20    in the SPDs.  *Id*. at 1294.  In one of the ERISA plans, the limitation period was on page 66 of a 76-

21    page plan, whereas the benefits and exclusions sections were on pages 3 through 36.  *Id*. at 1295.

22    In the other ERISA plan, the limitation period appeared on page 69 of a 77-page plan, whereas the

23    benefits and exclusions sections were on pages 3 through 38.  *Id*.  The *Spinedex* court concluded

24    that the limitations periods were "buried deep" in the SPDs instead of being placed "in close

25    conjunction" with the description or summary of benefits in the SPDs.  *Id*.  *Spinedex* further noted

26    the absence of any "reference, adjacent to the benefits description, to the page number on which

27

28    Case No.: 5:17-cv-03357-EJD
     ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN
     PART RHC'S MOTION TO DISMISS
                                              11

United States District Court
Northern District of California

the 'Limitation of Action' provision appear[ed]." *Id.*

Here, unlike in *Spinedex*, the SPD satisfies ERISA's disclosure requirements with regard to the "Allowable Claim Limits" provision and related benefits.  The "Allowable Claim Limits" provision is prominent.  It is listed in bold in the Table of Contents and appears at page 19 of the 84-page Plan, on a full page, before any other provisions regarding benefits or restrictions.  SPD at 19.  The specific limitation at issue—120% of Medicare rates—is clearly set forth in the "Allowable Claim Limits" provision "in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits."  29 C.F.R. § 2520.102-2(b).  Page 19 of the SPD also informs Plan participants that the "Allowable Claim Limits" will "supersede any other Plan provisions related to [the] application of Usual and Reasonable Charge Determination."  SPD at 19.  Furthermore, the "Allowable Claim Limits" provision is located "in close conjunction," with the description of the Plan's benefits, including the Covered Expenses and Out-of-Pocket Maximum Person benefit descriptions; only a few pages separate the "Allowable Claim Limits" page (SPD at 19) and the SPD's Medical Expense Benefit section (SPD at 27).  *See Arnold v. Arrow Transp. Co. of Delaware.*, 926 F.2d 782, 786 (9th Cir. 1991) (concluding that limited liability provision "within a few pages [of the benefits section] in a short document" satisfied ERISA).  That the claims limit of 120% of Medicare rates also appears in the Schedule of Benefits and again in the "Definitions of Terms" is inconsistent with an attempt to minimize, render obscure, or otherwise make the Allowable Claim Limits seem unimportant. As a result, the Court concludes that Plaintiff has failed to offer sufficient factual allegations to plausibly suggest an ERISA disclosure violation.

Because all of Plaintiff's improper-denial theories fail, the Defendants' motion to dismiss Plaintiff's first cause of action for improper denial of benefits in violation of ERISA § 502(a)(1)(B) is GRANTED without leave to amend.

**B.    Second Cause of Action:  ACA § 2707(b) "via ERISA § 502(a)(1)(B)"**

In the second cause of action, Plaintiff asserts an alleged violation of § 2707(b) of the

United States District Court
Northern District of California

1    ACA.  *See* 42 U.S.C. § 300gg-6(b).  Title 42 U.S.C. § 300gg-6(b) mandates that "[a] group health

2    plan shall ensure that any annual cost-sharing imposed under the plan does not exceed the

3    limitations provided for under" 42 U.S.C. § 18022(c)(1).  In turn, § 18022(c)(1) states in relevant

4    part that for any given plan year, "[t]he cost-sharing incurred under a health plan . . . shall not

5    exceed" a dollar amount calculated under 26 U.S.C. § 223(c)(2)(A)(ii) and adjusted under 42

6    U.S.C. § 18022(c)(4).  Thus, in conjunction with 42 U.S.C. § 18022(c)(1), § 2707(b) limits the

7    total amount of cost-sharing a group health plan can impose on a policy holder in a plan year.

8    Plaintiff asserts that by paying only a fraction of Plaintiff's charges for hospital services rendered

9    to the Patient, the Defendants left "the Patient on the hook for the vast bulk of hospital bills" in

10   violation of the cost-sharing limitation imposed on Defendants by the ACA.  *See* Compl. ¶ 82.

11           Defendants contend among other things, that the statute does not provide a private right of

12   action.  The Court agrees.  "'The fact that a federal statute has been violated and some person

13   harmed does not automatically give rise to a private cause of action in favor of that person.'"  *In re*

14   *Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) (quoting *Touche Ross &*

15   *Co. v. Redington*, 442 U.S. 560, 568 (1979)).  "Instead, the statute must either explicitly create a

16   right of action or implicitly contain one." *Id*. at 1230 (citation omitted).  In this case, § 300gg-

17   6(b), does not explicitly create a private right of action nor implicitly contain one.  Rather,

18   enforcement authority is vested with the states and the Secretary of Health and Human Services.

19   *See* 42 U.S.C. § 300gg-22(a)(1) and (2).  Acknowledging this limitation, Plaintiff argues that it has

20   a private right of action arising not directly under the ACA, but rather through ERISA's claim for

21   benefits, ERISA § 502(a)(1)(B).  *See* Opp'n to BAS Mot. at 12-13.

22           The Court rejects "this attempted end-run around the statutory limitation," as have other

23   courts that have considered similar issues.  *See, e.g.*, *Smith v. United Healthcare Insurance Comp.*,

24   No. 18-CV-06336-HSG, 2019 WL 3238918, at *6-7 (N.D. Cal. July 18, 2019); *Grossman v.*

25   *Directors Guild of Am., Inc.*, No. EDCV 16-1840-GW(SPX), 2017 WL 5665024, at *8 (C.D. Cal.

26   Mar. 6, 2017); *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1083 (W.D.

*United States District Court*
*Northern District of California*

1   Wash. 2018) (dismissing with prejudice ACA claim brought under ERISA because "Section

2   300gg-5 does not create a private right of action").  The Court GRANTS the motion to dismiss

3   Plaintiff's ACA § 2707(b) "via ERISA § 502(a)(1)(B)," without leave to amend, because

4   amendment would be futile.

5       **C.    Third and Fourth Causes of Action:  Intentional and Negligent Misrepresentation**

6           The third cause of action is for intentional misrepresentation and the fourth cause of action

7   is for negligent misrepresentation.  Defendants argue that the claims should be dismissed because

8   Plaintiff fails to allege those causes of action with sufficient particularity to satisfy Rule 9(b) of

9   the Federal Rules of Civil Procedure.

10          Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b).

11  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  Under Rule 9(b), a plaintiff

12  alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P.

13  9(b).  To satisfy this standard, the allegations of fraud must be "specific enough to give defendants

14  notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

15  defend against the charge and not just deny that they have done anything wrong."  *Semegen v.*

16  *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The "[a]verments of fraud must be accompanied by

17  'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*

18  *USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).   Further, "[w]here fraud has

19  allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or

20  agents who purportedly made the statements or omissions that give rise to the claim, or at a

21  minimum identify them by title and/or job responsibility."  *U.S., ex rel. Modglin v. DJO Glob.*

22  *Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015).

23          **i.    Intentional Misrepresentation**

24          As to the when and where, Plaintiff alleges that in and around March 2015, a

25  representative called the Plan to verify benefits.  Compl. ¶ 57.  As to the who and what, Plaintiff

26  alleges that its representative "spoke to a Plan representative named 'Genevieve,'" who verified

27
28  ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING IN
    PART RHC'S MOTION TO DISMISS

United States District Court
Northern District of California

1   that the Plaintiff's coverage with the Plan was active, and that the Plan would "cover 80% of

2   Patient's inpatient hospital stay." *Id*. "And it stated that there was a $3,000 deductible that had

3   not then been met, and a MOOP of $6,350 that had not yet been met. The Plan also provided a

4   specific authorization number for Patient's inpatient care, which the Hospital recorded as

5   '508668.'" *Id*. Plaintiff alleges that the customary meaning of Genevieve's representations was

6   that the Plan would pay 80% of Plaintiff's total bill until the $6,350 MOOP limit was reached, and

7   after which the Plan would pay 100% of the charges. *Id*. ¶ 58. Further, Plaintiff alleges that at the

8   time of these representations, Defendants knew they were false and had no intention of paying the

9   represented amount. *Id*. ¶ 89.

10          Taking the above allegations as true, Plaintiff has sufficiently pled fraud with particularity

11   as against the Plan, but not against any of the remaining Defendants. "In the context of a fraud

12   suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each

13   defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

14   2007) (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.1989)). The Plan

15   is the only Defendant who allegedly had a role in the alleged misrepresentation made by "the Plan

16   representative named 'Genevieve'". *See* Compl. ¶ 57.

17          RHC also contends that "promissory statements" and "broken promises" are not actionable

18   without an allegation that a plaintiff changed its legal position in reliance on the alleged

19   misrepresentation. RHC's Mot. at 10 (citing *Grant v. Aurora Loan Services, Inc.*, 736 F. Supp. 2d

20   1257, 1271 (C.D. Cal. 2010)). The argument is unpersuasive as to the intentional

21   misrepresentation claim because Plaintiff alleges reasonable reliance. Compl. ¶ 90.

22          The intentional misrepresentation claim is DISMISSED as to all Defendants except RHC

23   Management Health & Welfare Trust. The dismissal is with leave to amend.

24          **ii.   Negligent Misrepresentation**

25          The fourth cause of action is for negligent misrepresentation. The elements of a cause of

26   action for fraud and negligent misrepresentation are similar, except that the latter claim lacks the

27

United States District Court
Northern District of California

1    element of intent to deceive.  Therefore, "'[w]here the defendant makes false statements, honestly

2    believing that they are true, but without reasonable ground for such belief, he may be liable for

3    negligent misrepresentation, a form of deceit."  *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App.

4    4th 768, 781 (2013) (citations omitted).  Plaintiff's allegations show that it is not actually alleging

5    Defendants were negligent.  Instead, Plaintiff alleges: "Defendants knew that they intended never

6    to pay more than 80% of a much smaller base amount, *e.g.*, 120% of Medicare rates."  Compl. ¶

7    96.  This allegation is inconsistent with a claim for negligence.  Moreover, an allegedly false

8    promise to pay health plan benefits in the future does not support a claim for negligent

9    misrepresentation.  *Prime Healthcare Servs., Inc. v. Humana Ins. Co.,* 230 F. Supp. 3d 1194,

10   1207-08 (C.D. Cal. 2017) (citing *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153,

11   159 (1991)).

12           Therefore, the negligent misrepresentation claim is DISMISSED.

13       **D.     Fifth Cause of Action: Intentional Interference with Contractual Relations**

14           In the fifth cause of action, Plaintiff alleges that BAS and/or Phia Group have "acted

15   'behind the scenes' to encourage and influence the other Defendants into refusing to pay

16   [Plaintiff]."  Compl. ¶ 103.  To prove an action for intentional interference with contractual

17   relations, a party must demonstrate: (1) a valid contract between the plaintiff and a third party; (2)

18   defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

19   breach or disruption of the contractual relationship; (4) actual breach or disruption of the

20   contractual relationship; and (5) resulting damage.  *Pac. Gas & Elect. Co. v Bear Stearns & Co.*,

21   50 Cal. 3d 1118, 1126 (1990).

22           Here, Plaintiff is unable to demonstrate that there was a valid contract.  Plaintiff's claim for

23   intentional interference with contractual relations is premised on the belief that BAS and Phia

24   Group "knew that one or more of the other Defendants had orally agreed with [Plaintiff] to pay for

25   80% of the Patient's care, up to the $6,350 MOOP limit, above which Defendants would pay for

26   100% of the Patient's care."  Compl. ¶ 105.  An allegation about oral coverage authorizations,

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1   however, fails to plausibly allege a valid contract.  *See Out of Network Substance Use Disorder*

2   *Claims*, No. SACV192075JVSDFMX, 2020 WL 2114934, at *8 (C.D. Cal. Feb. 21, 2020)

3   ("routine preauthorization communications about the terms of insurance policies do not, as a

4   matter of law, create an implied contract").  Moreover, Plaintiff had already admitted and provided

5   medical services to the Patient prior to the alleged verification call with the Plan representative.

6   *See* Compl. ¶ 57.  Thus, Plaintiff has also not sufficiently identified the existence of an offer or

7   acceptance of an offer.  Accordingly, the Court will GRANT BAS's and Phia Group's motions to

8   dismiss this cause of action.

9   **IV.    CONCLUSION**

10          For the reasons stated above, Defendants' motions to dismiss are **GRANTED** as to the

11   first cause of action for violations of ERISA § 502(a)(1)(B), the second cause of action for

12   violations of § 2707(b) of the Affordable Care Act via ERISA, the third cause of action for

13   negligent misrepresentation, and fifth cause of action for intentional interference with contractual

14   relations.  The first, second, third and fifth causes of action are dismissed without leave to amend.

15          The remaining cause of action for intentional misrepresentation as to BAS and RHC

16   Management Co., LLC is **DISMISSED**, with leave to amend. The motion to dismiss the action for

17   intentional misrepresentation as to RHC Management Health & Welfare Trust is **DENIED**.

18          Plaintiff shall file any amended complaint within **twenty-one (21)** days of the date this

19   Order is filed.  A Case Management Conference shall be scheduled for **December 2, 2021**.  The

20   remaining parties shall submit a Joint Case Management Statement by **November 22, 2021**.

21

22          **IT IS SO ORDERED.**

23   Dated:  September 30, 2021

24

25   _____

26   EDWARD J. DAVILA
     United States District Judge

27

28   Case No.: 5:17-cv-03357-EJD
     ORDER GRANTING BAS'S AND PHIA GROUP'S MOTIONS TO DISMISS; GRANTING
     IN PART RHC'S MOTION TO DISMISS
     17